UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNA CRUZ VEGA,<br><br>        Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, et al.,<br><br>        Respondents. | Case No.: 3:25-cv-2725-CAB-MSB<br><br>**ORDER ISSUING PRELIMINARY INJUNCTION** |

Before the Court is Petitioner Reyna Cruz Vega's ("Petitioner") motion for a temporary restraining order. [Doc. No. 2.] The parties filed briefings addressing the issues in this case. [Doc. Nos. 6, 7.] Given the parties were provided notice and a full opportunity for briefing, the Court converts the motion for a temporary restraining order into a request for preliminary injunction. *See Hawai'i v. Trump*, 245 F. Supp. 3d 1227, 1234–35 (D. Haw. 2017), *vacated on other grounds*, 583 U.S. 941 (2017); *see also Soberano v. Guillen*, No. 21-CV-1084-RSM, 2021 WL 4970061, at *1 (W.D. Wash. Oct. 26, 2021) ("[A] temporary restraining order may be converted to a preliminary injunction."). The Court finds this matter suitable for determination on the papers. *See* CivLR 7.1(d)(1). For the reasons described below, the Court **GRANTS** the preliminary injunction.

///

///

## I. BACKGROUND

Petitioner, a Mexican national, entered the United States on April 19, 2009 near Tecate, California. [Doc. No. 2 at 4.] Since then, she has lived in Julian, California with her daughter. [*Id.* at 3.] On August 12, 2025, Petitioner was stopped at a checkpoint near Warner Springs, California, and arrested pursuant to the Immigration and Nationality Act for entry without inspection and lack of documentation. [*Id.* at 4.] On September 4, 2025, an immigration judge ("IJ") found that Petitioner was not a danger to the community and granted her release upon posting an $8,000 bond. [*Id.*] The Department of Homeland Security immediately appealed the bond decision, which stayed Petitioner's release. [*Id.*] Before the Board of Immigration Appeals ruled on Petitioner's case, another IJ issued a memorandum which rescinded the $8,000 bond. [*Id.* at 5.] That memorandum relied on *Matter of Yajure Hurtado*, which held that individuals detained at interior checkpoints are subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and thus IJs lack jurisdiction to hear bond requests. 29 I.&N. Dec. 216, 228–29 (BIA 2025).

Petitioner argues (1) that because she was granted release on bond she is entitled to a pre-deprivation hearing before re-detention under the Due Process Clause, and (2) that she is subject to § 1226(a), which provides a bond hearing, and not § 1225(b)(2), which does not.

## II. LEGAL STANDARD

In the Ninth Circuit, "[a] party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if he demonstrates (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A party must make a showing on all four prongs. *See A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018). ///

Alternatively, under the Ninth Circuit's "serious questions" standard, the court may issue a preliminary injunction if there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—and the balance of hardships tips sharply in the petitioner's favor and the other two *Winter* factors are satisfied. *All. for the Wild Rockies*, 865 F.3d at 1217 (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

### III. DISCUSSION

Petitioner's first argument is that she is entitled to relief because re-detention requires notice and a hearing under the Due Process Clause of the Fifth Amendment. When an individual is released from custody, a liberty interest is created which requires notice and a hearing before that individual may be taken back into custody. *See Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2578207, at *3 (N.D. Cal. Sept. 5, 2025) (listing cases); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032–33 (N.D. Cal. 2025). Petitioner, however, does not allege nor provide facts that she was ever "re-detained" or released from custody. Petitioner does not, for example, state that she was detained when she first entered the country and later released on an order of recognizance. *Cf. Valencia Zapata*, 2025 WL 2578207, at *2. Rather, the first time she was ever detained, according to her, was on August 12, 2025. [*See* Doc. No. 2 at 4.] Though an IJ granted her bond, it was automatically stayed due to an appeal, and she was never released from immigration custody. As such, the Court finds Petitioner's detention does not violate the Due Process Clause.

Petitioner's second argument is that her detention is unlawful because the second IJ's bond rescission wrongly classified Petitioner under 8 U.S.C. § 1225(b)(2), which required mandatory detention, and not § 1226(a), which entitles her to an individualized bond hearing. In a previous case, this Court held that the plain language of § 1225(b)(2) applies to noncitizens, like Petitioner, who entered the U.S. without inspection or parole, and thus denied a motion for injunctive relief. *Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228, at *1 (S.D. Cal. Sept. 24, 2025). However, since then, many

more of our sister courts have weighed in on this issue and held the opposite. *See, e.g. Martinez Lopez v. LaRose*, No. 25-CV-2717-JES-AHG, 2025 WL 3030457, at *4 (S.D. Cal. Oct. 30, 2025) (compiling cases); *see also Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *8 (N.D. Cal. Oct. 15, 2025); *see also Batista de Miranda v. Archambeault*, No. 25-CV-3019-AGS-MSB, 2025 WL 3171736, at *1 (S.D. Cal. Nov. 12, 2025). Although this Court construes the plain language of § 1225(b) and its relationship with § 1226(a) to cover noncitizens like Petitioner, in light of the ensuing developments in the rapidly evolving legal landscape of this issue, there is now at least a serious question going to the merits of the application of § 1225(b)(2) to Petitioner.

As to the second *Winter* factor, irreparable harm, "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). Moreover, Petitioner is likely to suffer irreparable harm by being separated indefinitely from her daughter. *See Leiva-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011) (finding "separation from family members" to constitute an "important" irreparable harm).

The final two *Winter* factors, which merge when the government is the nonmoving party, also weigh in Petitioner's favor. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "[T]he public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And it "is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). As to the balance of equities, the government is not harmed by being enjoined from unlawfully detaining someone. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Like other courts have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Valencia Zapata*, 2025 WL 2578207, at *4.

A court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and

damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted) (emphasis in original). If there is no realistic likelihood of harm to the respondent from enjoining the disputed conduct, "the district court may dispense with the filing of a bond[.]" *Id.* Given that Respondents have not argued that they would suffer any harm from classifying Petitioner under § 1226(a), and the Court sees no likelihood of harm either, the Court **DECLINES** to set bond.

## IV.   CONCLUSION

Based on the foregoing, the Court finds Petitioner has shown serious questions going to the merits of the application of § 1225(b)(2) to her, that she will be irreparably harmed without preliminary injunctive relief, and that the final two *Winter* factors are met with the balance of equities strongly in her favor. The Court therefore **GRANTS** a preliminary injunction to preserve Petitioner's "last uncontested status which preceded the pending controversy[.]" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted); *see also U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (holding that the primary purpose of a preliminary injunction is to preserve the status quo). Petitioner will be granted release if she posts the $8,000 bond.

The Court further **ORDERS** Petitioner to notify the Court within three days of Petitioner's release. In any case, the parties shall file a status update with the Court by **December 12, 2025**.

It is **SO ORDERED**.

Dated: November 20, 2025

Hon. Cathy Ann Bencivengo
United States District Judge